AT & T COMMUNICATIONS OF THE MIDWEST, INC., Plaintiff,

v.

U S WEST COMMUNICATIONS, INC., The Nebraska Public Service Commission and· the Commissioners of the Nebraska Public Service Commission in their Official Capacity, Defendants.

No. 4:97CV3286.

United States District Court, D. Nebraska.

May 2, 2001.

Loel P. Brooks, Brooks, Pansing law firm, Lincoln, NE, Rebecca B. DeCook, AT&T Communications of Midwest law Dept., Denver, CO, for plaintiff.

Tory M. Bishop, Marcia A. Rezac, Kutak Rock LLP, Omaha, NE, Norton Cutler, Philip J. Roselli, Blair Rosenthal, Denver, CO, John B. Devaney, Martin P. Willard, Kara M. Sacilotto, Perkins, Coie Law Firm. Washington, DC, for U.S. West Communications, Inc., defendant.

L. Jay Bartel, Attorney's Gen. Office, Lincoln, NE, for Nebraska Public Service Com'n, defendant.

## MEMORANDUM AND ORDER

KOPF, Chief Judge.

### I. BACKGROUND

The Telecommunications Act of 1996[1] (the "Act") was intended, in part, to "erode the monopolistic nature of the local telephone service industry" by requiring current providers of local telephone service (known as "incumbent local exchange carriers" or "incumbent LECs") to facilitate the entry of competing companies (known as "competitive local exchange carriers" or "competitive LECs") into local telephone service markets across the country. *Iowa Utilities Bd. v. Federal Communications Comm'n*, 120 F.3d 753, 791 (8th Cir.1997), *rev'd in part on other grounds sub nom. AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). In order to foster this competition, the Act requires incumbent LECs to allow competitive LECs to interconnect with the incumbents' network. The Act directs incumbent LECs and competitive LECs to negotiate in good faith regarding the terms of interconnection and, should differences arise, the parties may ask a state commission to mediate the negotiations. After the state commission approves the arbitrated interconnection agreement, any party may "bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of [47 U.S.C. §§ 251 and 252]." 47 U.S.C. § 252(e)(6). *See also* 47 U.S.C. §§ 251(a), 251(c), 252(a).

AT & T—a competitive LEC—brought this action[2] to challenge several terms of an interconnection agreement between it and U S WEST[3]—an incumbent LEC— that were arbitrated and approved by the Nebraska Public Service Commission. Pursuant to the parties' joint stipulations for dismissal, most of the claims in this case have been dismissed, except for Count Six of AT & T's Amended Complaint. (Filings 85 & 97.) Count Six requests declaratory and injunctive relief and asserts that the portion of the interconnection agreement that requires AT & T to provide U S WEST with access to AT & T's poles, ducts, conduits, and rights-of-way violates 47 U.S.C. § 251(b)(4) and the Federal Communication Commission's implementing regulations.[4] (Filing 53, at 23–

---

1. The Telecommunications Act of 1996, Pub.L. No. 104–104, 110 Stat. 56, is codified at 47 U.S.C. §§ 151 *et seq.*

2. This case was filed in September 1997 and was stayed from November 13, 1998 (filing 72), until September 20, 2000 (filing 92), pending the United States Supreme Court's decision in *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999), and subsequent proceedings in the Eighth Circuit Court of Appeals in *Iowa Utilities Bd. v. Federal Communications Comm'n*, 219 F.3d 744 (8th Cir.2000). This matter became ripe for decision on April 4, 2001, after updated briefs were submitted by the parties and by the Federal Communications Commission as *amicus curiae.*

3. Defendant U S WEST is apparently now known as Qwest Corporation. Because U S WEST has not filed a motion to substitute parties under Fed.R.Civ.P. 25, I shall continue to refer to this defendant as U S WEST.

4. The portion of the agreement at issue may be found in Attachment 4, Page 16, Section 3.2.1, of the Arbitrated Interconnection Agreement between AT & T and U S WEST, which is in volume 28, page 008267, of the evidentiary record. The provision at issue reads:

   > As required by the Act, [U S WEST] must provide AT & T access to the poles, ducts, rights-of-way (ROW), and conduits it owns or controls on terms, conditions, and prices comparable to those offered to any other entity. AT & T must provide [U S WEST] access to the poles, ducts, rights-of-way (ROW) and conduits it owns or controls, to the extent they relate only to local service, on terms, conditions, and prices comparable to those offered to any other entity.

   The parties do not dispute that U S WEST must provide AT & T access to the poles,

24.)

## II. DISCUSSION

### A. Standard of Review

█ In determining whether the portion of the interconnection agreement that requires AT & T to provide U S WEST with access to AT & T's poles, ducts, conduits, and rights-of-way meets the requirements of 47 U.S.C. §§ 251 and 252, the district court must consider de novo whether the agreement, as interpreted by the Nebraska Public Service Commission, complies with the Act and the implementing regulations established by the Federal Communications Commission. 47 U.S.C. § 251(d)(1) (FCC shall establish regulations to implement Act within six months after February 8, 1996); *Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Oklahoma, Inc.*, 235 F.3d 493, 498 (10th Cir. 2000) (district court to consider de novo whether agreement complies with Act and implementing regulations); *U S West Communications, Inc. v. Hamilton*, 224 F.3d 1049, 1052 (9th Cir.2000) (same); *Southwestern Bell Tel. Co. v. Public Util. Comm'n of Texas*, 208 F.3d 475, 482 (5th Cir.2000) (de novo standard).

### B. The Act

In a section applicable to "all local exchange carriers," the Act requires "[e]ach local exchange carrier . . . to afford access to the poles, ducts, conduits, and rights-of-way of such carrier to competing providers of telecommunications services on rates, terms, and conditions that are consistent with section 224 of this title." 47 U.S.C. § 251(b)(4). Because this portion of the statute does not distinguish between in-

ducts, rights-of-way, and conduits U S WEST owns or controls on the same terms and conditions it offers those facilities to other parties. The dispute here arises over AT & T's reciprocal obligation to provide such access to U S WEST.

cumbent and competitive local exchange carriers, as later parts of the statute do, *see* 47 U.S.C. § 251(c) (applicable to "incumbent local exchange carriers"), section 251(b)(4) appears to require all local exchange carriers—whether incumbent or competitive—to grant access to their poles, ducts, conduits, and rights-of-way.

However, section 224—which section 251(b)(4) specifically references—states that "[a] utility shall provide . . . any telecommunications carrier with nondiscriminatory access to any pole, duct, conduit, or right-of-way owned or controlled by it." For purposes of section 224, "utility" is defined in part to mean "any person who is a local exchange carrier . . . and who owns or controls poles, ducts, conduits, or rights-of-way used, in whole or in part, for any wire communications," but the term "telecommunications carrier" "does not include any incumbent local exchange carrier." 47 U.S.C. § 224(a)(1) & (5). Thus, in contrast to section 251, section 224 seems to require that all local exchange carriers grant access only to competitive—not incumbent—local exchange carriers.

### C. The Regulations

In response to section 251(d)(1) of the Act, which requires the Federal Communications Commission "to establish regulations to implement the requirements" of that section, the FCC issued its First Report and Order implementing the local-competition provisions of the Act. *In re Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, First Report and Order, 11 F.C.C. Rcd. 15,499 (released Aug. 8, 1996), *available at* 1996 WL 452885 ("First Report and Order").[5] The FCC's First Report

5. Many incumbent LECs and state utility commissions filed lawsuits across the country seeking to stay various aspects of the FCC's rulemaking. These challenges were consolidated in the United States Court of Appeals for the Eighth Circuit. *Iowa Utilities Bd. v.*

and Order contains the FCC's findings and rules pertaining to the Act's local-competition provisions, with the rules appearing as an appendix to the Report.[6]

The FCC's rules which were codified in the Code of Federal Regulations contain provisions that largely repeat the language of section 224, as discussed above. *See* 47 C.F.R. §§ 1.1402(a) & (h), 1.1403(a) (2001) (utilities must provide any telecommunications carrier with nondiscriminatory access to poles, ducts, conduits, rights-of-way owned or controlled by it; "utility" means any LEC, "telecommunications carrier" does not include incumbent LECs). The FCC's First Report and Order also contains findings that do not appear in the Code of Federal Regulations, but are particularly relevant to this dispute. Specifically, paragraph 1231 of the First Report and Order states:

> In addition, incumbent LECs cannot use section 251(b)(4) as a means of gaining access to the facilities or property of a LEC. A LEC's obligation under section 251(b)(4) is to afford access "on rates, terms, and conditions that are consistent with section 224." Section 224 does not prescribe rates, terms, or conditions governing access by an incumbent LEC to the facilities or rights-of-way of a competing LEC. Indeed, section 224 does not provide access rights

to incumbent LECs. We cannot infer that section 251(b)(4) restores to an incumbent LEC access rights expressly withheld by section 224. We give deference to the specific denial of access under section 224 over the more general access provisions of section 251(b)(4). Accordingly, no incumbent LEC may seek access to the facilities or rights-of-way of a LEC or any utility under either section 224 or section 251(b)(4).

First Report and Order ¶ 1231.

### D. Other Courts

#### 1. Courts Denying Incumbent LECs Access to Competitive LECs

The highest court that has dealt with the question of whether competitive LECs (like AT & T in this case) must make their poles, ducts, conduits, and rights-of-way accessible to incumbent LECs (like U S WEST) under 47 U.S.C. §§ 224 and 251(b)(4) is the Ninth Circuit Court of Appeals in *U S West Communications, Inc. v. Hamilton,* 224 F.3d 1049 (9th Cir. 2000). Ultimately holding that competitive LECs are not bound to provide access to incumbent LECs, the court found that while the FCC's analysis of sections 251 and 224 in ¶ 1231 of its First Report and Order was flawed, the court was bound to apply the FCC's interpretation of sections 251 and 224 because none of the parties had challenged the validity of ¶ 1231 via the Hobbs Act.[7]

---

*Federal Communications Comm'n,* 120 F.3d at 792. The Eighth Circuit Court of Appeals has not addressed the issue now confronting this court.

**6.** The FCC's rules are now codified in scattered sections of Title 47, Code of Federal Regulations. *See Iowa Utilities Bd. v. Federal Communications Comm'n,* 120 F.3d at 792 n. 6.

**7.** The Hobbs Act, 28 U.S.C. § 2342, grants the federal courts of appeal exclusive jurisdiction to determine the validity of all final orders of the FCC. *Hamilton,* 224 F.3d at 1054. *See also Iowa Utilities Bd. v. Federal Communica-*

*tions Comm'n,* 219 F.3d at 748. To challenge the validity of such orders, aggrieved parties must file a petition for review of the FCC's final order in a court of appeals, naming the United States as a party. Because the multidistrict litigation panel consolidated petitions challenging the FCC's First Report and Order and assigned them to the Eighth Circuit Court of Appeals, the petition must be filed in the Eighth Circuit. *Hamilton,* 224 F.3d at 1054. None of the parties in *Hamilton* filed such a petition.

One of the parties in *Hamilton* argued that ¶ 1231 was not a "final order" of the FCC, so the Hobbs Act did not prevent the court from reviewing the validity of ¶ 1231. The court

Specifically, the court found that sections 224 and 251 can be "read in harmony" because section 224 deals with all utilities, while section 251(b)(4) is aimed only at telecommunications carriers.

Because ILECs had their own physical networks and established rights-of-way when the Act was passed, Congress may have seen fit to grant access to non-carrier utilities' networks and rights-of-way only to CLECs. But in order to maintain a level playing field within the telecommunications industry itself, Congress reasonably could have granted reciprocal access among telecommunications carriers, ILECs and CLECs alike, by means of § 251(b)(4). This reading gives full effect to the language of § 224 and § 251(b)(4) without creating a conflict between them.

*Hamilton,* 224 F.3d at 1053–54. The court further reasoned that section 251(b)(4) refers to section 224 only insofar as it concerns the "rates, terms, and conditions" of access, and section 224's definition of the kind of LEC entitled to access is not a "rate, term, or condition" within the meaning of section 251(b)(4).

Because the *Hamilton* court believed that sections 224 and 251(b)(4) could be harmonized as described above, it "doubt[ed] the soundness of the FCC's interpretation of §§ 251(b)(4) and 224 of the Act contained in ¶ 1231 of the First Local Competition Order." However, the court held that "[it was] not at liberty to review that interpretation" because none of the parties had properly challenged ¶ 1231 under the Hobbs Act, requiring the court to apply ¶ 1231 as written and to uphold the provisions in the parties' agreements prohibiting the incumbent LEC from obtaining access to the competitive

LEC's poles, ducts, conduits, and rights-of-way. *Hamilton,* 224 F.3d at 1055.

Relying upon the language in section 224 which removes incumbent LECs from those who must be provided with nondiscriminatory access to another LEC's poles, ducts, conduits, or rights-of-way, the court in *U S West Communications, Inc. v. AT & T Communications of the Pacific Northwest, Inc.,* No. C97–1320R, at 9 (W.D.Wash. July 21, 1998) (Order Granting in Part and Denying in Part Cross Motions for Summary Judgment) also held that a competitive LEC was not obligated to provide access to an incumbent LEC. While noting that ¶ 1231 of the FCC's First Report and Order was consistent with its conclusion, the court explicitly declined to rely upon the FCC's "opinion." *Id.* at 9 n. 6.

### 2. Courts Allowing Incumbent LECs Access to Competitive LECs

Like the Ninth Circuit Court of Appeals in *Hamilton,* two federal district courts in that circuit believe the plain language of sections 224 and 251(b)(4) can be construed to give effect to all relevant provisions without being inconsistent. As aptly stated by the district court that was later reversed by *Hamilton:*

It might seem odd that Congress denied ILECs reciprocal access under § 224 but allowed them access under § 251. However, upon closer examination, there is a rational basis for this division. The definition of "utility" in § 224 is quite broad, encompassing electrical utilities, cable television operators, and the like. If an ILEC were a "telecommunications carrier" for purposes of § 224(f)(1), then an incumbent such as

---

found that because ¶ 1231 was neither tentative nor interlocutory, and because it determined rights and gave rise to legal consequences, it was a "final order" of the FCC

over which the federal courts of appeal have exclusive jurisdiction to review upon the filing of a proper petition for review under the Hobbs Act. *Id.* at 1054–55.

U.S. West could demand access to the infrastructure of every public utility, regardless of whether it provides local exchange services.

By contrast, the access provisions of § 251(b)(4) are confined to local exchange carriers. Unless a utility affirmatively enters into the marketplace by becoming a local exchange carrier, § 251(b)(4) is inapposite. Once a utility enters the arena, however, the duty to provide access becomes reciprocal. Sauce for the goose is also sauce for the gander.

That interpretation of [the] Act is also logical. Congress saw no reason to force U.S. West to build a new row of telephone poles if AT & T or MCI already have a row of poles running down the same street. Rather, the Act contemplates the sharing of such facilities, which in the long run should minimize the cost to consumers.

*U S West Communications, Inc. v. AT & T Communications of the Pacific Northwest, Inc.,* 31 F.Supp.2d 839, 850 (D.Or. 1998), *rev'd in part & vacated in part sub nom. US West Communications, Inc. v. Hamilton,* 224 F.3d 1049 (9th Cir.2000).

The Oregon district court also construed the reference to "rates, terms, and conditions that are consistent with section 224" in section 251(b)(4) to mean the portions of section 224 that specifically discuss rates, terms, and conditions, such as the language defining just and reasonable rates. "The FCC stretches this language past the breaking point when it reads 'rates, terms and conditions' to define who is entitled to receive access." *Id.* The court found that

because the FCC's interpretation of sections 251 and 224, as found in ¶ 1231 of its First Report and Order, "directly contradicts the plain meaning of the statute . . . ., this court will not defer to the agency's interpretation." *Id.* at 850–51 (citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)).

> Section 251(e)(6) requires this court to determine whether the challenged interconnection agreements comply with the Act. If the FCC is interpreting the Act in a manner that is contrary to its plain meaning, the court's obligation is to follow the language of the statute that Congress enacted.

*Id.* at 851. "Follow[ing] the language of the statute," in the Oregon court's view, meant revising the interconnection agreement at issue to allow both incumbent and competitive LECs to have access to each other's poles, ducts, conduits, and rights-of-way, otherwise known as "reciprocal access." *Id.*

The court in *U.S. West Communications, Inc. v. Jennings,* 46 F.Supp.2d 1004 (D.Ariz.1999), explicitly relied upon the Oregon district court's analysis to uphold the Arizona Corporation Commission's order of reciprocal access to all telephone poles, ducts, conduits, and rights-of-way not utilized exclusively for interstate telephone service, stating that "[t]he interpretation urged by the FCC . . . is contrary to the plain language of the Act." *Id.* at 1016–17.

As explained above, while the Ninth Circuit Court of Appeals in *Hamilton* agreed with the reasoning stated by these lower courts, it effectively reversed these decisions, declaring itself bound by ¶ 1231 of the FCC's First Report and Order.[8]

---

**8.** The only other district court opinion addressing this issue upheld its public service commission's order of reciprocal access because the commission was not bound by the access requirements set forth in section 224. *MCI Telecommunications Corp. v. New York Telephone Co.,* 134 F.Supp.2d 490 (N.D.N.Y.

2001). Pursuant to 47 U.S.C. § 224(c)(1), the access requirements of section 224 do not apply to "any case where such matters are regulated by a State." Because the state had properly certified to the FCC that it regulates access, the state public service commission was "neither bound by the F.C.C. Implemen-

### E. This Case

■ I am required to determine whether the portion of the interconnection agreement that requires AT & T to provide U S WEST with access to AT & T's poles, ducts, conduits, and rights-of-way meets the requirements of the Act and its implementing regulations. As stated above, section 251 of the Act appears to require all LECs—whether incumbent or competitive—to grant access to their poles, ducts, conduits, and rights-of-way, whereas section 224 seems to require that all LECs grant access only to competitive—not incumbent—local exchange carriers. The FCC's regulations track section 224, requiring that LECs provide nondiscriminatory access to competitive—but not incumbent—LECs. 47 C.F.R. §§ 1.1402(a) & (h), 1.1403(a) (2001). Thus, if one considers the Act and regulations alone, the disputed portion of the interconnection agreement requiring AT & T (the competitive LEC) to provide U S WEST (the incumbent LEC) with access complies with section 251 of the Act, but violates section 224 of the Act and the FCC's implementing regulations.

■ However, in light of the ambiguity created by sections 251 and 224, I must also consider the FCC's interpretation of these statutes contained in ¶ 1231[9] because "courts must give deference to an agency's reasonable interpretation of an unclear statute," providing that such interpretation does not "conflict with the plain meaning of the Act." *Iowa Utilities Bd. v. Federal Communications Comm'n,* 109 F.3d 418, 424 (1996). *See also Escudero–Corona v. Immigration & Naturalization Serv.,* 244 F.3d 608, 613 (8th Cir.2001) (court accords substantial deference to agency's interpretation of federal statutes it implements; where statute is ambiguous, consider whether agency's interpretation is based on permissible construction of statute).

> We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations
>
> > "has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.
> >
> > "... If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we

---

tation Ruling mandating that reciprocal access not be given to incumbent local service providers nor does its decision violate section 224 of the 1996 Act." Therefore, the court affirmed the public service commission's decision to grant reciprocal access. *Id.* at 503–04.

In the case now before the court, the parties have not indicated that Nebraska has certified to the FCC that it regulates pole attachments such that it is exempt from the FCC's rulings and section 224. *See* FCC, *States That Have Certified That They Regulate Pole Attachments,* 7 F.C.C.R. 1498 (released Feb. 21, 1992), *available at* 1992 WL 688053.

9. Paragraph 1231 represents the FCC's interpretation of its own regulations and the statutes it is charged with administering. *See United States v. Cleveland Indians Baseball Co.,* —— U.S. ——, 121 S.Ct. 1433, 149 L.Ed.2d 401 (2001) (when IRS's Revenue Rulings consistently interpreted IRS regulations in a certain way, "[w]e need not decide whether the Revenue Rulings themselves are entitled to deference. In this case, the Rulings simply reflect the agency's longstanding interpretation of its own regulations. Because that interpretation is reasonable, it attracts substantial judicial deference.").

should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned."

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (footnotes and internal citations omitted).

The purpose of the Telecommunications Act of 1996 was " 'to promote competition and reduce regulation in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies.' " *Iowa Utilities Bd. v. Federal Communications Comm'n*, 120 F.3d at 791–92 (quoting Telecommunications Act of 1996, Pub.L. No. 104–104, Purpose Statement, 110 Stat. 56, 56 (1996)). In order to accomplish this purpose, the Act subjects incumbent LECs "to a host of duties intended to facilitate market entry." *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. at 371, 119 S.Ct. 721; 47 U.S.C. § 251 (duties of incumbent local exchange carriers specified).

In light of the Act's purpose (to promote competition) and structure (imposing numerous duties on incumbent LECs to facilitate market entry), the FCC's interpretation that "no incumbent LEC may seek access to the facilities or rights-of-way of a LEC or any utility under either section 224 or section 251(b)(4)" is based on a permissible construction of the statutes and does not conflict with the plain meaning of the Act. Therefore, I should defer to the FCC's interpretation of the Act and its regulations contained in ¶ 1231, making the portion of the interconnection agreement that requires AT & T to provide U S WEST with access to AT & T's poles, ducts, conduits, and rights-of-way violative of the Act and its implementing regulations. *See Hamilton*, 224 F.3d 1049.

Accordingly,

IT IS ORDERED:

1. The portion of the Arbitrated Interconnection Agreement between AT & T and U S WEST that provides that "AT & T must provide [U S WEST] access to the poles, ducts, rights-of-way (ROW) and conduits it owns or controls, to the extent they relate only to local service, on terms, conditions, and prices comparable to those offered to any other entity" (found at Attachment 4, Page 16, Section 3.2.1, of the Arbitrated Interconnection Agreement) violates the Telecommunications Act of 1996 and the implementing regulations established by the Federal Communications Commission;

2. Defendants are enjoined from enforcing the portion of the Arbitrated Interconnection Agreement between AT & T and U S WEST that provides that "AT & T must provide [U S WEST] access to the poles, ducts, rights-of-way (ROW) and conduits it owns or controls, to the extent they relate only to local service, on terms, conditions, and prices comparable to those offered to any other entity"; and

3. Judgment shall be entered by separate document in favor of Plaintiff and against Defendants on Count Six of AT & T's Amended Complaint.

### JUDGMENT

Pursuant to the Memoranda and Orders previously entered (filings 85 & 97), the following claims are dismissed, each party to bear its own costs and attorney fees: Counts One, Two, Three, Four, and Five of AT & T's Amended Complaint for Declaratory and Other Relief Under the Telecommunications Act of 1996, and the counter and cross-claims of U S West Communications, Inc.

Further, judgment is entered in favor of Plaintiff and against Defendants on Count

Six of AT & T's Amended Complaint, providing that the portion of the Arbitrated Interconnection Agreement between AT & T and U S WEST that provides that "AT & T must provide [U S WEST] access to the poles, ducts, rights-of-way (ROW) and conduits it owns or controls, to the extent they relate only to local service, on terms, conditions, and prices comparable to those offered to any other entity" (found at Attachment 4, Page 16, Section 3.2.1, of the Arbitrated Interconnection Agreement) violates the Telecommunications Act of 1996 and the implementing regulations established by the Federal Communications Commission, and Defendants are enjoined from enforcing this language.