Cases vacated and remanded
by Supreme Court order
filed 5/28/02

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

---

Nos. 99-1845(L)
(CA-98-170-3-MU, CA-99-5-3-MU, CA-99-97-3-MU)

---

BellSouth Telecommunications, Inc.,

Plaintiff - Appellee,

versus

North Carolina Utilities Commission,

Defendant - Appellant.

---

O R D E R

---

The court amends its opinion filed February 14, 2001, as follows:

On page 7, first full paragraph, line 1 -- "Bell Atlantic" is corrected to read "BellSouth."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,
Plaintiff-Appellee,

UNITED STATES OF AMERICA; FEDERAL
COMMUNICATIONS COMMISSION,
Intervenors,

v.

No. 99-1845

NORTH CAROLINA UTILITIES
COMMISSION,
Defendant-Appellant,

and

US LECOF NORTH CAROLINA, LLC,
Defendant.

BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,
Plaintiff-Appellee,

UNITED STATES OF AMERICA; FEDERAL
COMMUNICATIONS COMMISSION,
Intervenors,

v.

No. 99-1846

NORTH CAROLINA UTILITIES
COMMISSION,
Defendant-Appellant,

and

INTERMEDIA COMMUNICATIONS,
Defendant.

BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,
Plaintiff-Appellee,

v.

NORTH CAROLINA UTILITIES
COMMISSION,
Defendant-Appellant,                                      No. 99-1847

MCIMETRO ACCESS TRANSMISSION
SERVICES, INCORPORATED,
Defendant-Appellee,

UNITED STATES OF AMERICA; FEDERAL
COMMUNICATIONS COMMISSION,
Intervenors.

BELLSOUTH TELECOMMUNICATIONS,
INCORPORATED,
Plaintiff-Appellee,

UNITED STATES OF AMERICA; FEDERAL
COMMUNICATIONS COMMISSION,
Intervenors,

v.
                                                          No. 99-1970
US LECOF NORTH CAROLINA, LLC,
Defendant-Appellant,

and

NORTH CAROLINA UTILITIES
COMMISSION,
Defendant.

2

Appeals from the United States District Court
for the Western District of North Carolina, at Charlotte.
Graham C. Mullen, Chief District Judge.
(CA-98-170-3-MU, CA-99-5-3-MU, CA-99-97-3-MU)

Argued: May 1, 2000

Decided: February 14, 2001

Before WIDENER, NIEMEYER, and KING, Circuit Judges.

_____

Vacated and remanded by published opinion. Judge Niemeyer wrote
the opinion, in which Judge Widener joined. Judge King wrote a dis-
senting opinion.

_____

## COUNSEL

**ARGUED:** James Carey Gulick, Special Deputy Attorney General,
NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North
Carolina; Joseph W. Eason, Sr., MOORE & VAN ALLEN, P.L.L.C.,
Raleigh, North Carolina, for Appellants. Darryl Mark Bradford, JEN-
NER & BLOCK, Chicago, Illinois; Michael K. Kellogg, KELLOGG,
HUBER, HANSEN, TODD & EVANS, P.L.L.C., Washington, D.C.,
for Appellees. Mark Bernard Stern, Appellate Staff, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Intervenors. **ON BRIEF:** Michael F. Easley, North Carolina
Attorney General, NORTH CAROLINA DEPARTMENT OF JUS-
TICE, Raleigh, North Carolina, for Appellant Utilities Commission.
Martin H. Brinkley, MOORE & VAN ALLEN, P.L.L.C., Raleigh,
North Carolina; James P. McLoughlin, Jr., MOORE & VAN ALLEN,
P.L.L.C., Charlotte, North Carolina, for Appellant US LEC. Paul M.
Smith, John J. Hamill, John R. Harrington, JENNER & BLOCK, Chi-
cago, Illinois; Thomas F. O'Neil, III, Adam H. Charnes, Mark B. Ehr-
lich, MCI WORLDCOM, INC., Washington, D.C., for Appellee MCI
Metro. Sean A. Lev, KELLOGG, HUBER, HANSEN, TODD &
EVANS, P.L.L.C., Washington, D.C.; Edward L. Rankin, III, Andrew

3

Dean Shore, BELLSOUTH TELECOMMUNICATIONS, INC., for
Appellee BellSouth. William Schultz, Acting Assistant Attorney General, Mark T. Calloway, United States Attorney, Christopher J.
Wright, General Counsel, John E. Ingle, Deputy Associate General
Counsel, Susan L. Launer, Deputy Associate General Counsel,
Charles W. Scarborough, Appellate Staff, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenors.

_____

## OPINION

NIEMEYER, Circuit Judge:

BellSouth Telecommunications, Inc., the incumbent local telephone company in North Carolina, filed these three actions, seeking
to review decisions of the North Carolina Utilities Commission (the
"NCUC") that required BellSouth to pay competing carriers reciprocal compensation for telephone calls made by BellSouth's customers
to internet service providers served by the competing carriers. BellSouth relied on the Telecommunications Act of 1996 as authority to
name the NCUC as a defendant in these federal court actions and for
subject matter jurisdiction. BellSouth also relied on 28 U.S.C.
§§ 1331 and 1332 for subject matter jurisdiction.

The district court determined that it had jurisdiction under the Telecommunications Act to hear the cases, but, in light of an intervening
ruling by the Federal Communications Commission ("FCC"), it
remanded the cases to the NCUC "to give [it] an opportunity to reexamine its conclusions with the benefit of the recent FCC ruling." The
district court found it unnecessary "at this time" to reach NCUC's
assertion of immunity from suit in federal court under the Eleventh
Amendment.

The NCUC appeals, asserting that the district court erred both in
its refusal to respect NCUC's sovereign immunity and in its exercise
of federal jurisdiction over these disputes, which the NCUC contends
may be resolved only in North Carolina state courts. A competing carrier named as a defendant in one of the actions, US LEC of North

4

Carolina, L.L.C., also appeals, asserting that the district court did not have subject matter jurisdiction. For the reasons that follow and those given in our contemporaneous decision in <u>Bell Atlantic Maryland, Inc. v. MCI WorldCom, Inc.</u>, ___ F.3d ___, No. 99-2459 (4th Cir. Feb. 14, 2001), we vacate the district court's orders in these cases and remand with instructions to dismiss these actions.

I

Congress enacted the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996) (codified at 47 U.S.C. §§ 151-614) (sometimes, the "1996 Act") with the purposes of reducing regulation in the telecommunications industry and promoting competition. As part of that effort, the 1996 Act enables local exchange carriers ("LECs") to use each other's networks by requiring LECs to enter into interconnection agreements through either voluntary negotiation or binding arbitration. <u>See</u> 47 U.S.C. § 252(a)(b). In particular, the 1996 Act requires, among other things, that each LEC, through such an interconnection agreement, "afford access" to its facilities and local network exchange, "provide interconnection" to that network to "any requesting telecommunications carrier," and "establish reciprocal compensation arrangements for the transport and termination of tele-communications." 47 U.S.C. § 251(b)(4), (b)(5), (c)(2). Through such reciprocal compensation arrangements, LECs pay each other for inter-carrier calls. Thus, if a subscriber of carrier A calls a subscriber of carrier B, carrier A must share with carrier B some of the revenues collected from the calling-subscriber to compensate carrier B for use of its facilities. Under regulatory authority conferred by the 1996 Act, the FCC has construed the scope of the reciprocal compensation obli-gation to apply to the "transport and termination of <u>local</u> telecommu-nications traffic." 47 C.F.R. § 51.701(a) (emphasis added). The interconnection agreements, whether reached through voluntary nego-tiation or through arbitration, are subject to review by State public service commissions and thereafter, in certain circumstances specified by the 1996 Act, by federal courts, and in other circumstances, by State courts.

BellSouth, the incumbent LEC in North Carolina, entered into interconnection agreements with competing LECs, US LEC of North Carolina, L.L.C. ("US LEC"), Intermedia Communications, Inc.

5

("Intermedia"), and MCImetro Access Transmission Services, Inc. ("MCImetro"). BellSouth negotiated its agreements with US LEC and Intermedia, and although portions of its agreement with MCImetro were arbitrated as provided by the 1996 Act, the reciprocal compensation provisions in that agreement were also negotiated. The NCUC approved these agreements on January 29, 1997; October 10, 1996; and May 12, 1997, respectively, and no judicial review of these approvals was sought.

Shortly after these interconnection agreements were approved, the parties found themselves in disputes over whether BellSouth was required to pay reciprocal compensation for its subscribers' telephone calls made to Internet Service Providers ("ISPs") that had local telephone numbers but provided access to interstate destinations through the Internet. BellSouth maintained that ISP-bound telephone calls were not local traffic and therefore did not trigger reciprocal compensation obligations under the parties' interconnection agreements. The competing LECs, on the other hand, took the position that ISP-bound calls were local traffic because the calls to the ISP numbers were local. The parties agree that this issue involves substantial sums of money.

To resolve the dispute, the LECs filed separate petitions against BellSouth before the NCUC, alleging that BellSouth was in breach of its interconnection agreements with them and requesting declaratory judgments that ISP-bound telephone calls are local traffic and injunctive relief directing BellSouth to pay reciprocal compensation due in respect to those calls. In each case, the NCUC ruled in favor of the competing LEC, declaring that "the reciprocal compensation provision contained in the [interconnection agreements] is fully applicable to telephone exchange service calls that terminate to ISP customers when the originating caller and the called number are associated with the same local calling area." The NCUC also directed that BellSouth pay reciprocal compensation for such calls, including "all sums currently due together with the required late payment charges" as well as "all sums coming due in the future." <u>In re Interconnection Agreement Between BellSouth Telecomms., Inc., and US LEC of North Carolina, LLC</u>, Docket No. P-55, SUB 1027 (N.C.U.C. Feb. 26, 1998); <u>see also In re Enforcement of Interconnection Agreement Between Intermedia Communications, Inc., and BellSouth Telecomms., Inc.,</u>

6

Docket No. P-55, SUB 1096 (N.C.U.C. Nov. 4, 1998); In re Complaint of MCImetro Access Transmission Servs., Inc. against BellSouth Telecomms., Inc., for Breach of Approved Interconnection Agreement, Docket No. P-55, SUB 1094 (N.C.U.C. Feb. 10, 1999).

Seeking to review the decisions of the NCUC, BellSouth filed separate actions in the district court against each of the competing LECs, naming as defendants in each action the applicable LEC and the NCUC. BellSouth alleged that under federal law, telephone calls made to the ISPs are interstate in nature, and it sought declaratory judgments and injunctive relief prohibiting enforcement of the NCUC's orders. The NCUC filed a motion to dismiss in each action, asserting that the action was barred by the Eleventh Amendment and that the 1996 Act does not confer subject matter jurisdiction on federal district courts to review State commission determinations enforcing or interpreting interconnection agreements. US LEC also filed a motion to dismiss the action against it on the ground that the district court lacked subject matter jurisdiction. The United States was permitted to intervene to oppose the NCUC's motion to dismiss the suits.

While the motions to dismiss were pending before the district court, the FCC issued a ruling (since vacated by the United States Court of Appeals for the D.C. Circuit) that declared ISP-bound traffic to be "non-local." See In re Implementation of the Local Competition Provisions in the Telecomms. Act of 1996, Inter-Carrier Compensation for ISP-Bound Traffic, 14 FCC Rcd 3689, 3690 (¶ 1) (1999) ("FCC Ruling"), vacated, Bell Atl. Tel. Cos. v. FCC, 206 F.3d 1 (D.C. Cir. 2000). The FCC noted, however, that the parties to interconnection agreements "may reasonably have agreed, for the purposes of determining whether reciprocal compensation should apply to ISP-bound traffic, that such traffic should be treated in the same manner as local traffic." FCC Ruling, 14 FCC Rcd at 3703-04 (¶ 24). Indeed, the FCC also concluded that "[w]here parties have agreed to include this traffic within their . . . interconnection agreements, they are bound by those agreements, as interpreted and enforced by the state commissions." Id. at 3703 (¶ 22). In light of the FCC Ruling, the district court requested additional briefing from the parties. In its supplemental brief, the NCUC maintained that its determinations in these cases were consistent with the FCC Ruling but also suggested that the

7

district court "might decide that the case should be remanded to the NCUC for reconsideration in light of the FCC's opinion."

The district court issued orders in two of the cases on May 20, 1999, and in the other, on May 24, 1999, finding in each case that it had jurisdiction under the 1996 Act, pursuant to 47 U.S.C. § 252(e)(6), to review the NCUC's orders interpreting and enforcing interconnection agreements. The court then "turn[ed] to the merits of the case[s]" and concluded that in light of the intervening ruling of the FCC, it would remand the cases to the NCUC to give the commission the opportunity "to reexamine" its decisions in light of the FCC Ruling. The court dismissed without prejudice BellSouth's claims for declaratory judgment and injunctive relief and found "it unnecessary to decide whether the Eleventh Amendment would bar suit against the NCUC," therefore not ruling on the NCUC's immunity defense. From these orders, the NCUC and US LEC filed appeals.

The NCUC contends that its sovereign immunity entitled it at the outset to a ruling on its Eleventh Amendment immunity defense and that in failing to rule on this defense, the district court "disregard[ed] the important sovereignty concerns underlying the Eleventh Amendment." The NCUC contends also, as does US LEC, that the district court lacked subject matter jurisdiction. They maintain that the federal review jurisdiction supplied by 47 U.S.C. § 252(e)(6) "is limited to the review of decisions of State commissions <u>approving</u> agreements or statements," not <u>interpreting and enforcing</u> them once approved. US LEC also argues that the district court did not have subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1332.

By order dated July 9, 1999, we consolidated these cases for purposes of briefing and oral argument.

II

For its principal argument, the NCUC contends that the district court's exercise of Article III jurisdiction over it to remand this case to the NCUC in effect vacated the NCUC's decision and ordered it to reconsider its decision in light of the intervening FCC ruling. The NCUC maintains that "[t]he district court's action in doing so utterly disregards the important sovereignty concerns underlying the Elev-

enth Amendment." It relies on the Supreme Court's recent decision in <u>College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board</u>, 119 S. Ct. 2219 (1999), which held that because Florida's sovereign immunity was not validly abrogated nor voluntarily waived, "the federal courts are without jurisdiction to entertain this suit against an arm of the State of Florida." <u>Id.</u> at 2233.

The appellees, as well as the United States as intervenor, contend that the NCUC, "by accepting Congress's offer to wield federal regulatory authority over the interconnection process," waived its immunity from suit in federal court. In <u>Bell Atlantic v. MCI WorldCom</u>, ___ F.3d ___, No. 99-2459, slip op. at 13-19 (4th Cir. Feb. 14, 2001), we rejected this argument, and for the reasons given there, we reject it in this case. The 1996 Act may fairly be construed to condition States' participation in regulation under the 1996 Act on their consent to <u>federal review</u> of State commission determinations made under 47 U.S.C. § 252. But the 1996 Act makes no reference to any authorization to sue the State itself in federal court and, more importantly, to suggest that the States waive their Eleventh Amendment immunity. As we more fully developed in <u>Bell Atlantic v. MCI WorldCom</u>, the courts will not find an implied or constructive waiver of Eleventh Amendment immunity; Congress's intent to condition participation in a federal program on waiver of such immunity must be explicit and unmistakably clear. <u>See Bell Atlantic v. MCI WorldCom</u>, ___ F.3d at ___, No. 99-2459, slip op. at 12-13.

The appellees argue that we need not reach the Eleventh Amendment issue, taking the district court's position that such a decision may be deferred. We do not agree. Without deciding whether North Carolina was amenable to suit in federal court, the district court determined its authority under Article III and the federal jurisdictional statute, ruling that it had federal jurisdiction over the State entity. It then "turn[ed] to the merits" and called for further briefing on the impact of the FCC's ruling. Finally, it exercised its declared federal jurisdictional power to remand the case to the NCUC to give it the first opportunity to reach the correct answer, reserving its later right to decide both Eleventh Amendment immunity and the merits. In this same vein, it denied BellSouth's claims for declaratory judgment and injunctive relief <u>without prejudice</u> to revisiting the claims. The court stated that it "recognizes that the NCUC may well reach the same

9

decision, but nevertheless, the court wishes to give the NCUC an opportunity to reexamine its conclusions with the benefit of the recent FCC ruling." In deferring its decision on the Eleventh Amendment immunity, the court explained that because it "has found that it has subject matter jurisdiction and has determined that it will remand th[e] matter to the NCUC for further consideration, the court finds it was unnecessary to decide whether the Eleventh Amendment would bar suit against the NCUC, and therefore declines to decide that issue at this time" (emphasis added).

In taking these steps, the district court asserted federal subject matter jurisdiction over a State without recognizing its sovereign immunity and, in the exercise of that jurisdiction, ordered further briefing, a remand, and the deferral of the Eleventh Amendment immunity issue until the case returned to the court. Its refusal to address the Eleventh Amendment issue at the outset, however, interfered with North Carolina's sovereignty as protected by the Constitutional structure. See Alden v. Maine, 119 S. Ct. 2240, 2254 (1999). This structure excludes States, in the areas of their sovereignty, from the federal exercise of Article III jurisdiction. See id. It therefore directly offends State sovereignty to require the States to argue federal jurisdictional issues emanating from Article III when their sovereignty entitles them to protection from federal courts' exercise of Article III power. See id. ("It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent" (quoting Hans v. Louisiana, 134 U.S. 1, 13 (1890)) (internal quotation marks omitted)); see also id. at 2255 (pointing out that sovereignty immunity "pose[s] a bar to federal jurisdiction over suits against nonconsenting States"). In short, the actions taken by the district court in this case violated the essence of the Eleventh Amendment protection: "The very object and purpose of the 11th Amendment were to prevent the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (quotation marks and citation omitted).

Accordingly, the NCUC, as an agency of the State of North Carolina, is entitled to be dismissed by virtue of its sovereign immunity as protected in federal court by the Eleventh Amendment.

10

III

Both US LEC and NCUC contend that the district court lacked subject matter jurisdiction over enforcement decisions rendered by the NCUC. They maintain that 47 U.S.C. § 252(e)(6), on which the district court relied for its exercise of jurisdiction, limits the scope of federal review to a special class of State commission determinations made during the "initial approval process" to assure that interconnection agreements comport with the requirements of 47 U.S.C. §§ 251 and 252(d). They argue that Congress did not intend to convert every contract dispute or issue of contract administration into a federal case. They acknowledge that Congress undoubtedly wanted to ensure that interconnection agreements be approved under uniform principles of federal law that apply the traditional utility standards of public convenience and necessity, public interest, and freedom from unjust discrimination. NCUC asserts, however, that there is no reason to find implied federal jurisdiction to ensure that the contracts themselves be subject to uniform interpretation because the terms of interconnection agreements, which are negotiated by the parties, vary.

As we pointed out in Bell Atlantic v. MCI WorldCom, § 252(e)(6) confers jurisdiction on federal courts to review State commission "determinations" made under § 252 "to determine whether the agreement . . . meets the requirements of section 251 and this section [252]." 47 U.S.C. § 252(e)(6). We noted,

> While this federal jurisdictional provision authorizes review of § 252 arbitration determinations ultimately leading to the formation of interconnection agreements, in the final analysis, the State commission determinations under § 252 involve only approval or rejection of such [interconnection] agreements. With respect to negotiated agreements in particular, the federal review is narrower. The only "determination" that can be made by the State commission under § 252 on a negotiated agreement is a determination to approve or reject it, and when the agreement is approved by the State commission, then there is a question whether there can be any "party aggrieved" to seek review in federal court.

Bell Atlantic v. MCI WorldCom, ___ F.3d at ___, No. 99-2459, slip op. at 34-35] (footnote omitted). We demonstrated that Congress

11

intended to reserve non-§ 252 determinations made by State commissions for review in State courts as specified by State law. See id. at 35.

The interconnection agreements subject to these actions were submitted to the NCUC and approved by it, and no judicial review was sought from these State commission determinations. The present disputes involve contract administration and turn on the proper interpretation of these agreements and their proper enforcement. But as we explained fully in Bell Atlantic v. MCI WorldCom,

> While this dispute was properly brought before the Maryland commission and decided by it -- both because of the commission's supervisory and regulatory authority over public service companies operating in Maryland and because of the 1934 Act's general assignment of responsibility to State commissions -- the commission's decision was not a § 252 determination and therefore was not reviewable in federal court by virtue of § 252(e)(6).

Id. at [52]. The same must be said in this case. The NCUC has jurisdiction over the administration of interconnection agreements entered into by public utility companies under its jurisdiction. See N.C. Gen. Stat. §§ 62-2, 62-30, 62-32, 62-60, 62-74, 62-110(f), 62-133.5. And judicial review of such decisions by the North Carolina state courts is provided by state law as preserved by the 1996 Act. See N.C. Gen. Stat. §§ 62-90, 62-96. Accordingly, as to the private parties in this case, the district court erred in asserting federal jurisdiction under 47 U.S.C. § 252(e)(6).

IV

BellSouth relied alternatively for subject matter jurisdiction on 28 U.S.C. §§ 1331 and 1332. Even though the district court did not reach the issue of whether these general jurisdictional provisions authorized federal jurisdiction, because we are reversing the district court's ruling on 47 U.S.C. § 252(e)(6), we must also determine whether the district court had federal jurisdiction under these general jurisdictional statutes.

12

In Bell Atlantic v. MCI WorldCom, we noted that the carefully considered intent of Congress was to provide limited review of State commission decisions in federal court and to leave all other review of State commission decisions to the State courts. Because of this specific congressional intent manifested in the 1996 Act, we stated,

> It would be nonsensical to conclude that even though Congress carefully articulated jurisdictional responsibility in the 1996 Act, it nevertheless intended to have 28 U.S.C.§ 1331 override this effort.

Bell Atlantic v. MCI WorldCom, ___ F.3d at ___, No. 99-2459, slip op. at 42.

For this reason and the other reasons given by us in Bell Atlantic v. MCI WorldCom, id. at 42-44, we hold that the general jurisdictional statutes do not backfill where Congress otherwise intended to allocate jurisdiction between the States and the federal courts.

V

In sum, these federal actions by BellSouth against the NCUC are barred by the Eleventh Amendment, and North Carolina did not waive that immunity by participating in the regulation of interconnection agreements because Congress did not manifest an intent to condition participation in the federal regulatory scheme upon the States' waiver of Eleventh Amendment immunity.

As to BellSouth's actions against US LEC, Intermedia, and MCImetro, the claims do not fall into the category of suits identified by 47 U.S.C. § 252(e)(6) for resolution in federal court. Such claims are explicitly left by the 1996 Act for resolution by State commissions and for review in State courts, and therefore federal courts have no jurisdiction to decide them. In addition, 28 U.S.C. §§ 1331 and 1332 do not operate to confer jurisdiction over cases from which Congress withheld federal jurisdiction in the 1996 Act.

For these reasons, we vacate the district court's judgment and remand with instructions to dismiss these actions.

VACATED AND REMANDED WITH INSTRUCTIONS

13

KING, Circuit Judge, dissenting:

For the reasons more fully articulated in my opinion in the companion case, Bell Atlantic Maryland, Inc. v. MCI WorldCom, Inc., No. 99-2459 (4th Cir. Feb. 14, 2001) (King, J., dissenting), I also must dissent in this case. Once again, I heed -- and the majority dismisses -- the clear admonition of Justice Scalia: "[T]here is no doubt . . . that if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel." AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 379 n.6 (1999). And, again, I agree with the reasoned decisions of our sister circuits that have considered these issues, while the majority isolates itself from them.

In my view, the federal courts possess jurisdiction pursuant to the Telecommunications Act ("Act"), specifically 47 U.S.C. § 252(e)(6), to review the determinations made by State commissions in enforcing interconnection agreements. See Bell Atlantic Md., No. 99-2459, slip op. at 51-54 (King, J., dissenting); Southwestern Bell Tel. Co. v. Brooks Fiber Communications of Okla., Inc., 235 F.3d 493, 496-97 (10th Cir. 2000); Southwestern Bell Tel. Co. v. Connect Communications Corp., 225 F.3d 942, 947 (8th Cir. 2000); MCI Telecomms. Corp. v. Illinois Bell Tel. Co., 222 F.3d 323, 337-38 (7th Cir. 2000), cert. denied sub nom. Public Serv. Comm'n v. Wisconsin Bell, Inc., 121 S. Ct. 896 (2001), and cert. denied sub nom. Illinois Commerce Comm'n v. MCI Telecomms. Corp., 121 S. Ct. 896 (2001); Southwestern Bell Tel. Co. v. Public Util. Comm'n, 208 F.3d 475, 479-80 (5th Cir. 2000).[1] Moreover, I believe that a State commission waives sovereign immunity by electing to participate in the regulation of local telecommunications under the Act. See Bell Atlantic Md., No. 99-2459, slip op. at 55-61 (King, J., dissenting); AT&T Communications v. BellSouth Telecomms., Inc., No. 99-30421, 2001 WL 38281, at *10 (5th Cir. Jan. 16, 2001); Illinois Bell, 222 F.3d at 342; MCI Telecomms. Corp. v. Public Serv. Comm'n, 216 F.3d 929, 938-39 (10th Cir. 2000).[2] The majority concludes that the district court, by defer-

_____

[1] Because the Act confers jurisdiction on federal courts, it is unnecessary to consider whether general federal question jurisdiction also is provided under 28 U.S.C. § 1331.

[2] Alternatively, the individual members of the State commission could have been -- but were not -- sued in their official capacities for injunc-

14

ring consideration of the Eleventh Amendment issue,"interfered with North Carolina's sovereignty as protected by the Constitutional structure." <u>Ante</u>, at 10. Although the district court should have addressed the Eleventh Amendment issue prior to its remand to the State commission, it did not, in my view, interfere with North Carolina's sovereignty.

Because the majority reaches contrary conclusions on these issues, I respectfully dissent.

_____

tive relief pursuant to <u>Ex parte Young</u>, 209 U.S. 123 (1908). <u>See Bell Atlantic Md.</u>, No. 99-2459, slip op. at 62-66 (King, J., dissenting); <u>AT&T Communications</u>, 2001 WL 38281, at *11; <u>Illinois Bell</u>, 222 F.3d at 345; <u>Public Serv. Comm'n</u>, 216 F.3d at 939; <u>Michigan Bell Tel. Co. v. Climax Tel. Co.</u>, 202 F.3d 862, 867 (6th Cir.), <u>cert. denied sub nom. Strand v. Michigan Bell Tel.</u>, 121 S. Ct. 54 (2000).

15