**ATLAS TELEPHONE COMPANY, et al., Plaintiffs,**

v.

**CORPORATION COMMISSION OF OKLAHOMA, et al., Defendants.**

**Nos. CIV–03–0347–F, CIV–03–0348–F, CIV–03–0349–F, CIV–03–0350–F.**

United States District Court, W.D. Oklahoma.

March 5, 2004.

---

Ambre C. Gooch, David W. Lee, Kendall W. Parrish, Mary K. Kunc, Ronald Comingdeer, Comingdeer Lee & Gooch, Kimberly K. Brown, Williams, Box, Forshee & Bullard PC, Oklahoma City, OK, for Plaintiffs.

Chanda R. Graham, Charles W. Wright, Rachel Lawrence Mor, Oklahoma Corporation Commission, Office of General Counsel, Jennifer H. Kirkpatrick, Marc Edwards, Phillips, McFall, McCaffrey, McVay, Murrah, Oklahoma City, OK, Lawrence S. Smith, Smith, Majcher & Mudge LLP, Austin, TX, John P. Walters, The Walters Law Firm, Edmond, OK, Mark Joseph Ayotte, Philip R. Schenkenberg, Briggs & Morgan, St Paul, MN, Michael G. Harris, William H. Hickman, Moricoli, Harris & Cottingham, Nancy M. Thompson, Oklahoma City, OK, Brett D. Leopold, Overland Park, KS, for Defendants.

### *ORDER*

FRIOT, District Judge.

These cases appeal orders of the Oklahoma Corporation Commission [1] establishing interconnection obligations under the Telecommunications Act of 1996, between

---

1. *In the Matter of the Application of [Certain Wireless Carriers] for Arbitration Under the Telecommunications Act of 1996,* Corporation Commission of the State of Oklahoma, Cause Nos. PUD 200200149, PUD 200200150, PUD200200151, and PUD200200153, and the final orders entered in those matters. Respectively, those orders are Final Order No. 468958 found in the Joint Designation of Rec-

traditional landline telephone companies and wireless telecommunications carriers. Each of these four actions seeks determination of the same issues, except that CIV–03–0349 also raises an additional issue unique to that action. The instant order determines the common issues among all four actions and is therefore entered in each of those actions. A separate order addressing only the additional issue unique to CIV–03–0349–F is also entered in that action today. (Docket entry no. 57 in –0349).

ord (JDR) at Bates Stamp 50, Final Order No. 468959 found in the JDR at Bates Stamp 3342, Final Order No. 468960 found in the JDR at Bates Stamp 209, and Final Order No. 468961 found in the JDR at Bates Stamp 348. Each of these individual final orders was entered on October 22, 2002. In both of the court's orders entered today, these individual final orders are referred to collectively as "the Commission's Final Orders."

2. All of the initial briefs of the plaintiffs filed in these actions are referred to together in this order as the briefs in chief. All of the response briefs filed in these actions are referred to together in this order as the response briefs. Page references are to the briefs filed in CIV–03–0347, –0348 and –0350, because the briefs filed in –0349 have a different pagination due to the extra issue briefed in that case. The same reply brief was filed in each of these four actions, so this order only refers to reply brief, singular, and the pagination of that brief does not change depending upon the case in which it was filed.

3. As identified in the court's docket sheet, the plaintiffs are: Atlas Telephone Company; Beggs Telephone Company; Bixby Telephone Company; Canadian Valley Telephone Company; Carnegie Telephone Company; Central Oklahoma Telephone Company; Cherokee Telephone Company; Chickasaw Telephone Company; Chouteau Telephone Company; Cimarron Telephone Company; Cross Telephone Company; Dobson Telephone Company; Grand Telephone Company; Hinton Telephone Company; KanOkla Telephone Association; McCloud Telephone Company; Medicine Park Telephone Company; Oklahoma Telephone & Telegraph; Oklahoma Western Telephone Company; Panhandle

## I. Preliminary Matters

### A. The Parties

The plaintiffs in each of these actions are traditional landline rural telephone companies, referred to by the parties in their briefs [2] and by the court in this order as rural telephone companies or RTCs.[3] The rural telephone companies bring these actions to challenge the Commission's orders entered in the proceedings below and the interconnection agreements implementing those orders. The RTCs contend

Telephone Cooperative, Inc.; Pine Telephone Company; Pinnacle Communications; Pioneer Telephone Cooperative, Inc.; Pottawatomie Telephone Company; Salina–Spavinaw Telephone Company; Santa Rosa Telephone Cooperative, Inc.; Shidler Telephone Company; South Central Telephone Association; Southwest Oklahoma Telephone Company; Terral Telephone Company; Totah Telephone Company, Inc., and Valliant Telephone Company.

The court observes that neither the Commission's Interlocutory Order No. 46613 (Bates Stamp 2721 in the jointly designated record, see p. 2., n. 2 of that order) nor the Commission's Final Orders, list Carnegie Telephone Company as a plaintiff in the proceedings below. However, Carnegie appears elsewhere in the record of the proceedings below, and no issue has been taken with respect to Carnegie's standing before this court. Accordingly, the court presumes that Carnegie's omission from the Commission's list of plaintiffs is a typographical error, and the court finds that Carnegie is a proper plaintiff before this court. If this finding is incorrect, then the parties shall so advise the court in a motion to modify this court order to delete Carnegie as a plaintiff, to be filed within three business days of today's date.

The RTCs state that they operate pursuant to certificates of convenience and necessity granted by the Commission, (briefs in chief, p. 2), and that they are "common carriers subject to the regulation of the [Federal Communications Commission] for the interstate services they provide and [to] the [Oklahoma Corporation Commission] for the intrastate services they provide." (Briefs in chief, p. 9.)

the orders and agreements are based on erroneous interpretations of law and unsupported evidentiary findings. The RTCs describe the nature of the dispute as generally concerning "(1) which telecommunications traffic is subject to the reciprocal compensation requirements of the Telecommunications Act of 1996 and (2) the rate of compensation to be paid for the transport and termination of such telecommunications." (Briefs in chief, p. 1.) Stated more precisely, the RTCs appeal four distinct aspects of the Commission's orders. These four issues are set out with specificity in the "Statement of the Issues"

4. The RTCs' briefs in chief (at pp. 1–2, and see p. 37) state that they seek "declaratory relief invalidating the *Arbitration Order* and certain provisions of the Agreements and permanent injunctive relief preventing enforcement of the *Arbitration Order* and the provisions of the Agreements." (Emphasis added.) It is more accurate to state that the RTCs seek declaratory and injunctive relief from the Commission's Final Orders. Those Final Orders adopt findings and conclusions as stated in the Arbitrator's Report and Recommendations, however, so the distinction is mostly one of semantics. The "Relief Requested" portions of the First Amended Complaints filed in these actions correctly state they the RTCs seek declaratory and injunctive relief from the Commission's Final Orders.

5. Wireless telecommunications carriers are companies which provide commercial mobile radio service, referred to by the RTCs in their briefs (and in the regulations) as CMRS providers.

6. As identified by the defendants in their response briefs (p. 1 at n. 1), the defendant wireless carriers in each of the four actions are AT & T Wireless Services, Inc. (AT & T Wireless), the private defendant in CIV–03–0347; Southwestern Bell Wireless LLC d/b/a Cingular Wireless (Cingular), the private defendant in CIV–03–0348; WWC License L.L.C. (Western Wireless), the private defendant in CIV–03–0349, an action which, as already mentioned, is determined by this order and also by a separate order entered today; and Sprint Spectrum, L.P. d/b/a Sprint

portion of this order. The RTCs seek declaratory and injunctive relief from the Commission's Final Orders determining these issues [4] and from the interconnection agreements implementing these determinations.

Defendants in all four related actions include the Oklahoma Corporation Commission, and Commissioners Denise A. Bode, Bob Anthony, and Jeff Cloud. The commissioners are sued in their official capacities only. A different wireless telecommunications carrier,[5] referred to as a wireless carrier or provider in this order, is also a defendant in each action.[6] The

PCS (Sprint PCS), the private defendant in CIV–03–0350.

The wireless carriers state that "Unlike landline companies providing service regulated by a state commission, CMRS providers are creatures of and governed by federal law. Because radio waves do not recognize state boundaries, Congress has used its power under the Interstate Commerce Clause to implement a 'unified and comprehensive regulatory system' for radio transmissions under 47 U.S.C. § 201(a)." (Response briefs, pp. 3–4.) As recognized by the RTCs (briefs in chief, p. 3), the wireless carriers' licenses are issued by the Federal Communications Commission (FCC) and cover geographic areas that do not coincide with pre-existing telephone exchange boundaries approved by the Oklahoma Corporation Commission, but which instead encompass different areas, the largest of which is a metropolitan trading area, or MTA. (The quoted passage in the RTCs' briefs in chief refers to a *metropolitan* trading area but the regulation cited by the RTCs for this proposition, refers to *major* trading area.) 47 C.F.R. § 24.202. The court, therefore, finds that "major trading area" is the proper term. A major trading area has been defined by the FCC as the local service area for wireless providers. As stated in *Implementation of the Local Competition Provisions of the Telecommunications Act of 1996*, CC Docket No. 96–98, First Report and Order, 11 FCC 15499, FCC 96–325 (1996) at ¶ 1036:

"[I]n light of [the FCC's] *exclusive authority to define the authorized license areas of wireless carriers, we will define the local service*

defendants jointly defend the Commission's Final Orders and the associated interconnection agreements. They ask the court to affirm those orders and the agreements in all respects.

### B. Procedural Background

The undisputed allegations in the pleadings and undisputed statements in the briefs, the statements made by the Commission in its orders, and the documents included in the jointly designated record (JDR), establish that the procedural background of these actions is as follows.

This dispute originally arose from negotiations for interconnection agreements between the wireless carriers and the rural telephone companies. The parties conducted group negotiations and resolved many issues but were unable to resolve all issues. Most significantly, negotiations broke down over reciprocal compensation arrangements for the transport and termination of interconnecting telecommunications, and over the rate for such telecommunications transport and termination.

To resolve the open issues, each of the wireless carriers which is now a defendant in these actions filed a petition with the Oklahoma Corporation Commission, seeking arbitration under the 1996 Telecommunications Act, 47 U.S.C. § § 151 *et seq.* (the Telecommunications Act or the Act). The Commission consolidated the causes and assigned an arbitrator. The parties engaged in discovery, submitted written direct and rebuttal testimony, and tried the case before the arbitrator in a three-day hearing. The arbitrator took the issues under advisement and ultimately authored the Report and Recommendations of the Arbitrator (the Arbitrator's Report or the Report).

The Arbitrator's Report included fifteen numbered paragraphs under the heading, "Findings of Fact, Conclusions of Law and Recommendations." The Report also included a single-spaced, 51–page summary of witness testimony (attached to the report as Exhibit "A"), and a single-spaced, three-page issues matrix describing the issues submitted, the relevant contract (or interconnection agreement) sections, and the arbitrator's decision with respect to each of those issues (attached to the report as Exhibit "B"). The Arbitrator's Report, with exhibits, was adopted by the Commission in its Interlocutory Order and in the Commission's Final Orders. The entire Report, with exhibits, was attached to each of these orders.

The RTCs appealed the Commission's Final Orders to the Oklahoma Supreme Court. The Oklahoma Supreme Court, however, dismissed the appeals for lack of jurisdiction.

On March 13, 2003, the RTCs filed the instant actions. First Amended Complaints were filed in each of these actions

---

area for calls to or from a CMRS network for the purposes of applying reciprocal compensation obligations under Section 251(b)(5). Different types of wireless carriers have different FCC-authorized licensed territories, the largest of which is the "Major Trading Area" (MTA). Because wireless licensed territories are federally authorized, and vary in size, we conclude that the largest FCC-authorized wireless license territory (i.e., MTA) serves as the most appropriate definition for local service area for CMRS traffic for purposes of reciprocal compensation under section 251(b)(5) as it avoids creating artificial distinctions between CMRS providers. *Accordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges."* (Emphasis added; footnotes deleted.)

Understood in the broadest possible terms, it is the lack of continuity between the area of operation of the state regulated rural telephone companies and the federally regulated wireless carriers, which gives rise to this dispute.

on July 10, 2003. Other than the additional issue unique to CIV–03–0349, the issues raised by the pleadings in each of these actions are identical. Therefore, the court held a joint status and scheduling conference, at which time, with the agreement of the parties, one briefing schedule was established to govern all four actions. The actions were not consolidated, but pursuant to the joint schedule, the parties filed one joint designation of record (with one supplement to the JDR). The plaintiff RTCs then submitted joint briefs in chief (entitled "initial" briefs), the defendant wireless carriers submitted joint response briefs (with an appendix), and the RTCs submitted a joint reply brief (also with an appendix). The Commission and commissioners relied on the wireless providers' briefing and did not otherwise participate in the argument.

Although a variety of issues (such as certain affirmative defenses) were raised in the pleadings, the court finds that all issues other than those briefed by the plaintiffs have been abandoned.

The court commends the parties and their counsel for the highly professional manner in which they have conducted themselves in these proceedings. The parties have cooperated admirably as to all procedural matters requisite to the effective, orderly and reasonably expeditious presentation of issues to the court for determination. This high level of professionalism has, to put it mildly, been most helpful.

### C. Jurisdiction

The RTCs bring these actions under 42 U.S.C. § 252(e)(6) of the Telecommunications Act. That statute provides as follows.

In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the [interconnection] agreement or statement [of the Commission determining interconnection obligations under the Act] meets the requirements of section 251 of this title and this section.

Based on this provision and the procedural history of this dispute, the court finds and concludes that it has jurisdiction.

### D. Standard of Review

■ Both the RTCs and the wireless carriers rely on *Southwestern Bell Telephone Co. v. Brooks Fiber Communications of Okla., Inc.,* 235 F.3d 493 (10th Cir.2000) as stating the applicable standard of review to be exercised by this court. (Briefs in chief, p. 19, n. 1; response briefs, p. 8, n. 29.) As stated by the Tenth Circuit in *Southwestern Bell,* when an aggrieved party brings a cause of action under § 252(e)(6), a federal district court will consider *de novo* whether interconnection agreements are in compliance with the Act and implementing Federal Communications Commission regulations. *Id.* at 498. All other issues, including state law determinations, are reviewed under an arbitrary and capricious standard. *Id.* Thus, in these actions, the Oklahoma Corporation Commission's findings of fact, and its application of the law to those facts, are reviewed under an arbitrary and capricious standard. As observed by the Supreme Court, *Bowman Transp. Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974), "Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."

These standards of review are the ones which this court applies in this order. Review of the Commission's evidentiary findings is also limited, of course, to the record

developed during the administrative proceeding. *See, e.g., United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714–15, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963) ("the reviewing function is one ordinarily limited to consideration of the decision of the agency or court below and of the evidence on which it was based").

### E. Statement of the Issues

As already stated, in each of these related actions, the rural telephone companies appeal four common aspects of the Commission's rulings.[7]

1. The RTCs' first point of error[8] is: "The OCC Arbitration Orders and the Agreements Impermissibly Require the RTCs to Waive recovery of Costs associated with the Transport and Termination of Telecommunications." (This is the proposition as it appears in the text of the briefs in chief at p. 20; in the index to those briefs it is worded slightly differently.) Explaining this contention in the text of their briefs, the RTCs state that "Neither the OCC's Arbitration Orders nor the

Agreements contain provisions for compensation. Therefore, the Agreements are contrary to federal law and FCC regulations." (Briefs in chief, p. 20.) The wireless carriers articulate this first issue as: "Did the OCC act in an arbitrary and capricious manner in imposing a 'bill-and-keep'[9] mechanism for implementing reciprocal compensation between each RTC and each Wireless Carrier?" (Response briefs, p. 1.)

After studying the plaintiffs' first point of error as developed in the text of the plaintiffs' own briefs, the court articulates the first issue before it as follows: Do the Commission's orders impermissibly require the RTCs to waive recovery of costs associated with the transport and termination of telecommunications because the orders improperly impose a system of bill and keep? (This issue is addressed in Part A of the Discussion portion of this order.)

2. The second point of error[10] raised by the RTCs is that "The OCC Arbitration

---

7. In CIV–03–0349, instead of simply re-urging their four common points of error and then adding a fifth point of error to cover the extra issue in that action, the RTCs insert the unique issue as their fourth point of error in – 0349 and re-number their common fourth point of error as their fifth point of error in – 0349. Thus, although four of the five points of error raised in each of these actions are identical, the issues are numbered and briefed in a different order depending upon which set of briefs the reader is using. The instant order refers to the RTCs' points of error as they are numbered in their briefs filed in – 0347, –0348 and –0350.

8. This issue corresponds to issue no. 4 on the joint issues matrix (the matrix).

As previously stated, the matrix is attached as Exhibit "B" to the Arbitrator's Report, and the Arbitrator's Report, with exhibits, was adopted by the Commission as a part of the Commission's Final Orders. Accordingly, the matrix is not "merely a tool used by the arbitrator [which] has no procedural or legal

significance" as the RTCs contend (at p. 2 of the reply brief). Rather, it is an integral part of the Commission's Final Orders now on appeal, and it contains, in many instances, the specifics of the rulings to which the RTCs object. Thus, the matrix rulings are crucial to an understanding of what the Commission ruled, and therefore, to the RTCs' challenges to those rulings. It is for this reason that the court cross-references the plaintiffs' issues as briefed with those issues as referenced in the matrix.

9. Bill and keep is a compensation arrangement whereby interconnecting carriers do not charge each other for the termination of telecommunications traffic which originates on the other carrier's network. *See,* 47 C.F.R. § 51.713(a). In other words, each company terminates the other's traffic without charge and receives in-kind termination services back.

10. This issue corresponds to issues 1 and 2 on the matrix.

Order and the Agreements Impermissibly Require the RTCs to compensate the CMRS providers for Traffic originated by other carriers." (Briefs in chief, p. 23.) The wireless carriers [11] articulate this issue as: "Do principles of reciprocal compensation apply on all calls between a Wireless Carrier and an RTC that originate and terminate in the same Major Trading Area, or MTA?" (Response briefs, p. 1.)

After studying the plaintiffs' second point of error as developed in the text of the plaintiffs' own briefs, the court articulates the second issue before it as follows: Do the Commission's orders impermissibly apply reciprocal compensation obligations to all calls originating and terminating within the same major trading area, even when such intra-MTA land-to-wireless calls (that is, from the RTCs to the wireless providers) are carried by intermediate carriers? (This issue is addressed in Part B of the Discussion portion of this order.)

3. The RTCs' third point of error [12] is that "The OCC Order and the Agreements are Contrary to the Federal Act because they do not contain a rate for terminating CMRS provider traffic." (Briefs in chief, p. 30.) The wireless carriers articulate this issue as: "Did the OCC err in rejecting the RTCs' proposed cost study?" (Response briefs, p. 1). The pertinent portion of the plaintiffs' reply brief is entitled: "The OCC's Rejection of the RTCs' Traffic Study and the Forward–Looking Cost it Produced was Arbitrary and Capricious." (Reply brief, p. 19.)

After studying the plaintiffs' third point of error as developed in the text of the plaintiffs' own briefs, the court articulates the third issue before it as follows: Did

the Commission err in rejecting the RTCs' cost study and their proposed forward-looking rate? (This issue is addressed in Part C of the Discussion portion of this order.)

4. The RTCs' fourth point of error [13] is that "The OCC's refusal to arbitrate the unresolved issue of compensation to the RTCs for traffic terminated prior to the effective date of the agreements is contrary to federal law." (Briefs in chief, p. 32.) The wireless carriers articulate this issue as: "Did the OCC err in refusing to consider the RTCs' request for compensation prior to the effective date of the final agreements approved by the OCC?" (Response briefs, p. 1.)

After studying the plaintiffs' fourth point of error as developed in the text of the plaintiffs' own briefs, the court articulates the fourth issue before it as follows: Was the refusal to determine a historical compensation issue regarding compensation claimed due to the RTCs for their termination of traffic prior to the effective date of the agreements, contrary to federal law? (This issue is addressed in Part D of the Discussion portion of this order.)

## II. Discussion

A. Do the Commission's Orders Impermissibly Require the RTCs to Waive Recovery of Costs Associated with the Transport and Termination of Telecommunications Because the Orders Improperly Impose A System of Bill and Keep?

 The RTCs argue that the Commission's imposition of bill and keep is erroneous because the "the OCC provided no substantive findings supporting either its

---

11. Defendant Cingular does not take a position or participate in the discussion concerning plaintiffs' second point of error. (Response briefs, p. 16, n. 64.)

12. This issue corresponds to issues 5 and 6 on the matrix.

13. This issue is not included on the matrix.

rejection of the RTCs' evidence of traffic imbalance or its reliance on a presumption of balanced traffic." (Briefs in chief, p. 21.) "As such," the RTCs go on to state, "the OCC's decision to reject the RTC's [sic] evidence rebutting a presumption of balanced traffic was arbitrary and capricious and is contrary to the Act and the FCC's regulations." (Briefs in chief, p. 21.)

FCC Rule 51.713(b)[14] provides that a state commission may impose bill and keep as the method for reciprocal compensation if that commission determines that the amount of traffic from one network to the other is roughly balanced with the amount of telecommunications traffic flowing in the opposite direction. Subsection (c) of the same rule provides that nothing in § 51.713 precludes a state commission from presuming that "the amount of telecommunications traffic "from one network to another is roughly balanced with the amount of traffic flowing in the opposite direction and is expected to remain so, unless a party rebuts such a presumption."[15]

Clearly, these rules allow a state commission to place the burden of proof on carriers asserting that traffic is not in balance—here, the RTCs. It is also clear that they authorize commissions to invoke a presumption of roughly balanced traffic unless the commission finds that such a presumption has been adequately rebutted. Invoking this presumption is exactly what the Oklahoma Corporation Commission did when it stated in its Interlocutory

Order (reaffirmed at p. 3 of the Commission's Final Orders), that "there is a presumption of 'balanced traffic.'"[16] Moreover, the Commission expressly adopted the Arbitrator's Report in each of the individual Final Orders (at p. 3 of each of those Final Orders), and attached a complete copy of that Report, with exhibits, to each of those individual Final Orders. That Report found that, *"Because no forward-looking rate was established, and traffic is roughly balanced, bill-and-keep should be adopted as the appropriate mechanism for providing reciprocal compensation."*[17] (Emphasis added.) When it adopted the Arbitrator's Report (at p. 3 of the Commission's Final Orders), the Commission also adopted the arbitrator's rationale and his findings in support of bill and keep.

For these reasons, the court disagrees with the RTCs' contention that the Commission's ruling regarding bill and keep is in error because it "provided no substantive findings supporting either its rejection of the RTCs' evidence of traffic imbalance or its reliance on a presumption of balanced traffic." (Briefs in chief, p. 21.) The court finds that the Commission adequately supported its rulings with substantive findings that no forward-looking rate was established and that the presumption of roughly balanced traffic had not been rebutted.

The RTCs also argue the related but somewhat different contention that the Commission's findings regarding bill and

---

**14.** 47 C.F.R. § 51.713(b)

**15.** 47 C.F.R. § 51.713(c).

**16.** Interlocutory Order No. 466613 (at p. 9), authored by the Commission and entered in PUD Nos. 200200149, 200200150, 200200151, and 200200153. The Interlocutory Order is found in the JDR at Bates Stamp 2721, and is Attachment B to the Com-

mission's Final Orders. The Commission's Final Orders state "that Interlocutory Order No. 466613 continues to reflect the position of the Commission *en banc* regarding the above-entitled Cause[s]." (Commission's Final Orders at p. 3).

**17.** Finding of Fact No. 13 at p.4 of the Arbitrator's Report (emphasis added).

keep are in error because the evidence is not sufficient to support those findings. The RTCs state: "the OCC disregarded substantial evidence in the record presented by the RTCs and arbitrarily presumed traffic was balanced. Such finding by the OCC is devoid of any evidentiary support in the record and is thus, arbitrary and capricious." (Briefs in chief, p. 23.) To support this conclusion, the RTCs argue that they "presented sufficient evidence in support of their claim that they incur costs in terminating the additional calls delivered by CMRS providers," that "such costs are positive due to the significant imbalance of traffic," and that they "presented the only traffic study in evidence and such study demonstrated a significant imbalance of traffic terminated by the RTCs." (Briefs in chief, pp. 20–21.)

The question at this stage is whether the record evidence, when taken as a whole, is sufficient to support what the Commission found when it adopted the Arbitrator's Report, *i.e.* that "no forward-looking rate was established" and that the RTCs had not rebutted the presumption of "roughly balanced" traffic. (Arbitrator's Report, p. 4, ¶ 13.) The RTCs presented a traffic study sponsored by RTC witness McBride, which purported to show that the traffic flowing to and from the parties was not roughly balanced. (Rebuttal testimony of William McBride on behalf of RTCs, p. 14, found in the JDR at Bates Stamp 1484.) The RTCs' study, however, did not analyze traffic between any individual RTC and any individual wireless carrier. (Transcript of proceedings June 17, 2002, pp. cb66, 67, found in the JDR at Bates Stamp 3672–73.) Several witnesses testified to problems with the RTCs' study, and limitations were acknowledged by the study's sponsoring witness. (Transcript of pro-

ceedings June 17, 2002, pp. cb–62–86 found in the JDR at Bates Stamp 3668–92; Transcript of proceedings June 18, 2002, pp. rdh–140–147, found in the JDR at Bates Stamp 3930–37.) Even the RTCs have admitted certain "errors" with their traffic study results, although they argue these errors are "minor" and "not fatal." (Briefs in chief, p. 23.)

After thorough consideration of the briefs and the substantial administrative record, the court rejects the RTCs' contention that the Commission's ruling is "devoid of any evidentiary support in the record and is thus, arbitrary and capricious." (Briefs in chief, p. 23.) To the contrary, the court finds and concludes that there is adequate evidentiary support for the Commission's underlying findings supporting its imposition of bill and keep, which include its findings that the RTCs' cost study should be rejected and that no forward-looking rate was established.

Finally, in response to the RTCs' arguments regarding the incorrectness of bill and keep, the wireless carriers argue that there is no prejudicial effect to the RTCs from the Commission's determinations because those determinations are limited by the following statement in the Arbitrator's Report as adopted by the Commission.

> The Arbitrator concurs with Staff's recommendation that transport and termination be provided on a bill and keep basis until an individual study shows that it is more economically and justifiably appropriate to do otherwise. The bill and keep arrangement shall continue until the Commission has determined that an imbalance in the exchange of telecommunication traffic exists, at which time a forward-looking cost study is to be utilized to establish the rate.[18]

---

**18.** From the "Arbitrator's Decisions" at p. 1, ¶ 4 of the issues matrix attached as Exhibit B to the Arbitrator's Report.

The court finds and concludes that there is some prejudice to the RTCs from the Commission's adverse ruling imposing bill and keep, but it also finds and concludes that such prejudice is expressly limited by the above-quoted statement.

In summary, the RTCs have not shown that the Commission's Final Orders or the interconnection agreements required by those orders impermissibly require the RTCS to waive recovery of costs associated with the transport and termination of telecommunications. The Commission's Final Orders provide for compensation through a bill and keep arrangement specifically allowed by FCC rules, an arrangement which provides for recovery of such costs. The Commission adequately supports its determinations imposing bill and keep with findings, and those findings are, in turn, adequately supported by the record evidence. The court concludes that the Commission did not err when it imposed bill and keep as a mechanism for implementing reciprocal compensation between each RTC and each wireless carrier until such time as an individual study is presented which adequately rebuts the presumption of roughly balanced traffic.

B. Do the Commission's Orders Impermissibly Apply Reciprocal Compensation Obligations To All Calls Originating and Terminating Within the Same Major Trading Area, Even When Such Intra–MTA Land–to–Wireless Calls are Carried by Intermediate Carriers?

The RTCs' second point of error is that the Commission incorrectly ruled that reciprocal compensation applies to all calls originating and terminating within the same major trading area (MTA), even when such land-to-wireless intra-MTA calls (from the RTCs to the wireless providers) are carried by intermediate carriers, thereby improperly requiring the RTCs to compensate the wireless providers for such calls.[19]

The Telecommunications Act imposes upon all local telephone exchange carriers (LECs), including the RTCs in this action, the duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications. 47 U.S.C. § 251(b)(5). For calls between "a LEC and a telecommunications carrier other than a CMRS [or wireless] provider," the FCC has defined the telecommunications to which reciprocal compensation applies as "Telecommunications traffic exchanged between a LEC and a telecommunications carrier other than a CMRS provider, *except for* telecommunications traffic that is interstate or intrastate exchange access, information access, or exchange services for such access." 47 C.F.R. § 51.701(b)(1) (emphasis added). This order refers to the excepted calls as "access calls." By excluding such access calls from the definition of telecommunications to which reciprocal compensation applies, the FCC has expressly limited LEC-to-LEC reciprocal compensation obligations to calls within landline local calling areas.

By contrast, for calls between a local exchange carrier and a CMRS provider such as the RTC-to-wireless calls in issue here, the FCC has adopted a different definition of telecommunications as to which reciprocal compensation applies. For this type of call, the FCC has defined telecommunications traffic as "Telecommu-

---

**19.** Because the boundaries for determining what calls are local calls for wireless traffic are not necessarily the same as the boundaries which determine what calls are local calls for landline traffic, see n. 6, *infra.*, calls which originate with landline telephone companies such as the RTCs, may be required by law to be carried by an intermediate carrier before they are delivered to a terminating wireless services provider, even though such calls originate and terminate within the same MTA.

nications traffic exchanged between a LEC and a CMRS provider that, at the beginning of the call, originates and terminates within the same Major Trading Area, as defined [by the regulations]." 47 C.F.R. § 51.701(b)(2). The definition includes no exception for access calls carried by an intermediary carrier.

Thus, although the FCC was clearly aware of the issues created when access calls are exchanged, as evidenced by the exemption from reciprocal compensation obligations for LEC–to–LEC access calls under § 51.701(b)(1), the FCC did not create a similar exception for LEC–to–CMRS access calls which originate and terminate within the same major trading area. 47 C.F.R. § 51.701(b)(2).

The court agrees with the wireless carriers' characterization of the RTCs' contentions regarding this issue, which is that, "At bottom, the RTCs argue that...since all of the land to mobile intraMTA traffic they [the RTCs] send to the Wireless Carriers is 'toll telephone service,' they [the RTCs] are not required to make reciprocal compensation payments to the CMRS providers." The court also agrees with the wireless providers that "[This] argument is directly contradictory to FCC Rule 51.701(b)." (Response briefs, p. 19.) [20]

The court concludes that the Oklahoma Corporation Commission did not err when it ruled [21] that reciprocal compensation obligations apply to all calls originated by an RTC and terminated by a wireless provider within the same major trading area,

without regard to whether those calls are delivered via an intermediate carrier. In so ruling, the Oklahoma Corporation Commission merely applied federal regulatory definitions to the dispute before it.

## C. Did the Commission Err when it Rejected the RTCs' Cost Study and Their Proposed Forward–Looking Rate?

■ Defendants' response briefs (at pp. 24–36) summarize the evidence supporting the Commission's rejection of the RTCs' cost study and its rejection of the rate proposed by the RTCs. The court finds those arguments well taken and further finds that no purpose would be served in restating them here, especially given the overlap of these evidentiary issues with the evidentiary issues already covered in Part A of the Discussion portion of this order. The court does, however, touch briefly on the following points which are not covered elsewhere.

First, as pointed out by the wireless carriers (response briefs, pp. 26–27), the burden of proof is on the RTCs to show that a proposed rate meets the required standards, a contention which the RTCs do not dispute in their reply brief.

Second, it is also undisputed that even the RTCs did not propose that the Commission adopt the rate generated by their cost study. (See, direct testimony of Jonathan P. Harris, on behalf of the RTCs at pp. 11–12, found in the JDR at Bates Stamp page 675–76.)

20. With regard to the *TSR Wireless* decision which both sets of parties argue supports their positions, the court concludes that the language in question from that decision is ambiguous as best, that the wireless carriers appear to have the better side of the argument concerning the proper interpretation of that language (as stated in the response briefs at pp. 22–23), and that the decision is not determinative of the issues before this court in any event. *In the Matter of TSR Wireless L.L.C. et*

*al. v. U.S. West Communications, Inc. et al,* File Nos. E–98–13, E–98–15, E–98–16, E–98–17, E–98–18, 2000 WL 796763, 15 FCC Rcd 11166 (F.F.C. June 21, 2000), affirmed, *Owest Corporation v. FCC,* 252 F.3d 462 (D.C.Cir. 2001).

21. Page 3 of the Arbitrator's Report, Findings and Fact Nos. 6 and 7; and "Arbitrator's Decisions" as stated in ¶ ¶ 1 and 2 of the issues matrix.

Third, in the text of their briefs pertaining to this point of error, the RTCs state repeatedly that the arbitrator improperly based his findings upon his opinion that the model employed by the plaintiffs had already been found to be "suspect by the Arbitrator in at least one previous, unrelated hearing due to the ability of the persons using it to manipulate the results" (briefs in chief, p. 31; Arbitrator's Report quoted in reply brief at p. 20 at n. 97 and at p. 21 at n. 101). Because of the emphasis the RTCs place on this argument, the court addresses it in more detail.

The RTCs are correct that in his findings, the arbitrator refers to his previous experience evaluating "the Hatfield model," which was the model used by the RTCs to try to establish forward-looking costs in this case. (Arbitrator's Report, p. 3 at ¶ 11.) *Immediately* following that statement regarding his prior experience with the Hatfield model, however, the arbitrator goes on to make findings regarding the results of the plaintiffs' model as they obtain "[I]n *this* case. . . ." (Arbitrator's findings, p. 3 at ¶ 11, emphasis added.) The arbitrator's findings then detail: problems with the RTCs' proposed rate, based, as it was, on "an average cost study"; and the arbitrator's conclusion that "it seems to be impossible for an average cost study to be representative of all those varied companies." The Report further states that "[i]t doesn't really matter whether 1994 data or the 2000 data, which was not allowed, is used" because "the results are still questionable." (Arbitrator's Report, p. 4 at ¶ 12.) It was for these reasons that the arbitrator went on to find, as discussed earlier in this order, that: "Because no forward-looking rate was established, and traffic is roughly balanced, bill-and-keep should be adopted as the appropriate mechanism for providing reciprocal compensation" and that "[a]ny party [who contends otherwise] must present an individual cost study that complies with the Act,

and must show that establishing rates and rendering bills is more economically appropriate than bill and keep." (Arbitrator's Report, p. 4 at ¶ 13.) Moreover, all of the arbitrator's findings and recommendations are supported with 51 single-spaced pages which summarize the evidence in *this* case, some of it in exhaustive detail, and much of it bearing on the weight to be given—or not given—to the RTCs' cost study. (The evidentiary summary is attached as Exhibit "A" to the Arbitrator's Report.) Thus, the court finds and concludes that the arbitrator did not improperly base his determinations on evidence taken in another case, but that he properly based his determinations on evidence taken in this case.

In summary, consistent with other findings already stated in this order, the court finds that the record evidence is sufficient to support the Commission's rejection of the RTCs' cost study as flawed, and its rejection of the rate or rates proposed by the RTCs in the proceedings below. The court concludes that the Commission did not err in adopting the arbitrator's findings rejecting the plaintiffs' cost study model and RTCs' proposed rate or rates.

D. Was the Refusal To Determine a Historical Compensation Issue Regarding Compensation Claimed to be Due to the RTCs For their Termination of Traffic Prior to the Effective Date of the Agreements, Contrary to Federal Law?

█ In their fourth proposition the RTCs argue that the Commission erred in not resolving a disputed issue regarding compensation claimed to be due to the RTCs for prior traffic terminated by the RTCs, referred to in this order as the historical compensation issue.

There is a fundamental problem with the RTCs' attempt to have this court resolve the correctness of the ruling which struck this compensation issue from the proceed-

ings below. Although the RTCs' briefs state that *the OCC* erred by failing to resolve this issue (plaintiffs' reply brief, p. 21), the RTCs have identified no *Commission* decision determining that this historical compensation issue would not be considered. The ruling about which plaintiffs complain (at reply brief, p. 21 at n. 104) is merely a ruling by the arbitrator stating that he would not hear evidence on this historical compensation issue because it was unrelated to the matter assigned to him.[22] Furthermore, in stating his ruling on this issue, the arbitrator suggested that the RTCs could pursue the merits of this issue in a separate cause. The RTCs do not contend that they have pursued this issue in a separate proceeding before the Commission. There also appears to be no dispute that the RTCs did not raise the arbitrator's ruling in any *documents* filed with the Commission at any time, including in their formal appeal of the Arbitrator's Report.[23]

This court reaches no conclusion as to whether the historical compensation issue identified by the RTCs has been waived, or as to whether, at this late date, the RTCs could somehow pursue that issue before the Commission. This court does conclude, however, that it has no jurisdiction to review the propriety of an arbitrator's ruling stated orally during the hearings which was not reviewed or ruled upon by the Commission; the RTCs did not exhaust their administrative remedies with respect to the arbitrator's ruling and as a result, there is no Commission ruling for this court to review. Accordingly, the court finds and concludes that the RTCs' fourth point of error should be denied without prejudice because the court does not have jurisdiction to determine the merits of the contested arbitrator's ruling.

### Conclusion

After thorough study of the parties' submissions, the record, and the relevant arguments and authorities, the court orders as follows with respect to the common points of appeal raised in each of the above-styled actions.

The RTCs' first, second, and third points of error challenging aspects of the Oklahoma Corporation Commission's Final Orders entered in the proceedings below and challenging associated aspects of the interconnection agreements required by those orders, are each **DENIED**. The RTCs' fourth point of error is also **DENIED**, but not on the merits, as the court finds and concludes that it does not have jurisdiction to determine the merits of that issue. Consistent with these rulings, the declaratory and injunctive relief requested by the RTCs in their First Amended Complaints filed in each of the above-styled actions is **DENIED**, and the Commission's Final Orders and the interconnection agreements required by those orders are **AFFIRMED** in all respects.

---

22. The arbitrator struck this issue from the matters before him, stating that "it does not belong in an arbitration, [and that] it's a separate cause before the Commission and the Commission does have the power to make that determination." (Transcript of proceedings before the arbitrator on April 25, 2002, p. 28 found in the JDR at Bates Stamp p. 3547.)

23. Although the reply brief cites one page of argument from proceedings on August 1, 2002 before the Commission *en banc* (*see* reply brief, p. 22 at n. 107, citing p. 10 of proceedings before the Commission *en banc*, at Bates Stamp 4087 of the JDR) as pertaining to this issue, this citation is only to oral argument. That argument does not even mention the arbitrator's refusal to hear or determine the historical compensation issue.